**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARTIN CARROLL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AL JAZEERA INTERNATIONAL (USA), LLC, *et al.*,<br><br>Defendants. | Civil Action No. 25-cv-4549 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiffs Martin Carroll and Moses Iremiren brought suit against their former employer, defendant United American Security, LLC, a private security company doing business as GardaWorld, alleging that defendant unlawfully paid plaintiffs "less than the statutorily required hourly wage and fringe benefits for security officers in office buildings," in violation of the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq*. First Am. Compl. ("FAC") ¶ 2, ECF No. 27. Pending before the Court is defendant's motion to dismiss plaintiffs' amended complaint for failure to state a claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6), due to expiration of the applicable three-year statutory limitations period, *see* Def.'s Mot. to Dismiss or Compel Arbitration and Stay ("Def.'s Mot."), ECF No. 31; Def.'s Suppl. Mem. Supp. Mot. to Dismiss ("Def.'s Suppl. Mem."), ECF No. 44, which motion plaintiffs oppose, *see* Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 47. For the reasons explained, this motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

The factual background and procedural history relevant to the pending motion are described below.

### A. Factual Background

The relevant facts are taken from plaintiffs' amended complaint. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). Defendant is a "security services company" that is "registered with the District of Columbia" to "provide[] security officers to clients throughout the District." FAC ¶ 12.[1] Plaintiffs Carroll and Iremiren were employed by defendant as security officers to serve defendant's clients at various locations. *Id.* ¶¶ 13-14, 21, 23. Defendant never "provided [plaintiffs] the written notice of the security officer minimum wage as required by law," *id.* ¶ 107, and according to the amended complaint, proceeded to pay plaintiffs "less than the statutorily required hourly wage and fringe benefits for security officers in office buildings as set forth in D.C. Code § 32-1003(h)," *id.* ¶ 2; *see also id.* ¶¶ 6-9 (detailing the wages allegedly owed to plaintiffs under Section 32-1003(h)).

Carroll worked for defendant "from approximately 2016 through approximately September 24, 2024." *Id.* ¶ 43. For part of this employment period, he held a security officer license from the District of Columbia with number SO30453, from September 22, 2016, through April 30, 2020. *Id.* ¶¶ 46, 48. After Carroll's security officer license "expired" in April 2020, defendant "did not obtain a renewed license for . . . Carroll until December 4, 2023," *id.* ¶¶ 71-72, at which point Carroll was "a licensed security professional," *id.* ¶ 47. Throughout Carroll's employment, defendant "managed and controlled the process of obtaining . . . Carroll's security officer license from the District of Columbia," *id.* ¶ 48, and "continued to deploy . . . Carroll in the same capacity, at the same post, performing the same duties, wearing the same

[1] Plaintiffs initially named one of defendant's clients, Al Jazeera International (USA), LLC ("Al Jazeera"), as an additional defendant in this case and brought DCWPCL and unjust enrichment claims against it. *See* Notice of Removal ¶¶ 5-6, ECF No. 1; FAC ¶¶ 116-45. Plaintiffs subsequently dismissed their claims against Al Jazeera, *see* Notice of Voluntary Dismissal, ECF No. 53; Min. Order (Sept. 24, 2026), leaving defendant United American Security, LLC as the sole remaining defendant.

uniform, without interruption," even after Carroll's license had expired, *id.* ¶ 53. Those duties included "implementing heightened security protocols," "responding to emergencies and incidents," "conducting regular patrols, monitoring CCTV, enforcing security policies to ensure the safety of tenants and visitors, and maintaining a high level of awareness at all times." *Id.* ¶¶ 58-59.

Iremiren worked for defendant as a security officer "from approximately September 2020 through approximately August 2022." *Id.* ¶ 83. He held a security officer license from the District of Columbia with number SO211252, for part of that employment period, from March 10, 2021, through August 25, 2024. *Id.* ¶ 86. "At all relevant times," Iremiren's duties "involved safeguarding the premises and the people and property within it—screening those who enter, addressing situations that could threaten the building or its occupants (including alarms, unsecured doors, or unauthorized individuals and trespassers), applying site rules designed to keep tenants and visitors safe, conducting routine rounds, and maintaining constant situational awareness." *Id.* ¶ 88.

Plaintiffs allege, "[u]pon information and belief," that they occasionally worked over forty hours in a single workweek, but that defendant did not pay them "the 'DC Supplement' for any of [those] overtime hours, or hours in excess of forty in a workweek," *id.* ¶¶ 61-63 (Carroll); *id.* ¶¶ 90-92 (Iremiren), and that defendant also "violated the [DCWPCL] by knowingly failing to pay [p]laintiffs the required compensation for a 'security officer' described in D.C. Code § 32-1003(h)," *id.* ¶ 114; *see also id.* ¶ 68 (Carroll alleging that defendant paid him "less than minimum wage prescribed for security officers who work in office buildings").

**B. Procedural Background**

Carroll initially filed this action in D.C. Superior Court on December 9, 2025, against defendant and one of defendant's clients, Al Jazeera International (USA), LLC ("Al Jazeera"),

seeking damages for unpaid minimum and overtime wages under the DCWPCL. *See* Notice of Removal ¶¶ 5-7, ECF No. 1. The named defendants timely removed the action to federal court on the basis of diversity jurisdiction. *See id.* ¶¶ 16-22, 41; Al Jazeera's Notice of Consent to & Joinder in Notice of Removal, ECF No. 14. After briefing was completed on an initial motion to dismiss, Carroll amended the complaint to add plaintiff Iremiren, who had filed a DCWPCL claim against defendant in D.C. Superior Court, and to add an unjust enrichment claim against Al Jazeera. *See* Pls.' Corrected Mot. for Leave to Amend Compl. at 1-2, ECF No. 22; Def.'s Resp. to Pls.' Corrected Mot. for Leave to Amend Compl. at 2, ECF No. 23; Min. Order (May 5, 2026); *see generally* FAC.

Al Jazeera filed a motion to dismiss plaintiffs' amended complaint, *see* Al Jazeera's Mot. to Dismiss, ECF No. 28, and a related request to take judicial notice of the "the District of Columbia Department of Licensing and Consumer Protection ('DLCP') Occupational and Professional License Search record" for Carroll's credential issued on December 4, 2023, Mot. to Take Judicial Notice at 1, ECF No. 30, both of which motions were ultimately denied as moot when plaintiffs voluntarily dismissed their claims against Al Jazeera, *see* Notice of Voluntary Dismissal, ECF No. 53; Min. Order (Sept. 24, 2026).

Meanwhile, defendant filed its own motion to dismiss plaintiffs' amended complaint, or, in the alternative, compel arbitration and stay proceedings on May 22, 2026. *See* Def.'s Mot. at 1-2. Less than two weeks later, however, plaintiffs moved, without opposition, to stay briefing on defendant's motion pending a decision in a separate case before this Court raising defendant's "lead argument," so that the parties' briefs could address the impact of that decision. *See* Pls.' Mot. to Stay Briefing at 2, ECF No. 36; Pls.' Proposed Order at 1, ECF No. 36-4 (citing *Chang v. United American Security, LLC*, No. 1:24-cv-02377-BAH (D.D.C.)). Following issuance of

this Court's decision in *Chang*, the parties completed supplemental briefing on defendant's pending motion, on July 30, 2026. *See* Min. Order (June 25, 2026) (citing *Chang v. United American Security*, No. 24-cv-2377 (BAH), 2026 WL 1661436 (D.D.C. June 9, 2026)); Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 49. In its supplemental briefing, defendant clarified that it "has voluntarily withdrawn, without prejudice, the alternative relief—to compel arbitration and stay proceedings—that it initially sought," and is now seeking only dismissal of the amended complaint for failure to state a claim. Def.'s Suppl. Mem. at 2 n.2. Defendant's motion to dismiss is now ripe for review. *See* Def.'s Reply.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint in favor of the plaintiff," *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (internal quotation marks omitted) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Courts, however, "need not accept inferences . . . not supported by the facts set out in the complaint, nor must the court accept legal conclusions." *Id.* (quoting *Hettinga*, 677 F.4th at 476). In determining whether a complaint fails to state a claim, a court may consider only "the facts alleged in the complaint, documents attached thereto or incorporated therein and matters of

which it may take judicial notice." *Simmons v. Rubio*, 170 F.4th 905, 910 (D.C. Cir. 2026) (quoting *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

## III. DISCUSSION

Defendant primarily moves to dismiss plaintiffs' amended complaint because plaintiffs did not possess the security officer license required to qualify for the heightened wage rate due under D.C. Code § 32-1003(h) during the applicable statute-of-limitations period. *See* Def.'s Suppl. Mem. at 5. Also, "to complete the record," "satisfy its obligation to address [legal] authority," and "preserve [its] appellate rights," defendant "reasserts [its] argument" that plaintiffs DCWPCL claim may not proceed independently of a corresponding claim under the D.C. Minimum Wage Act ("DCMWA"), *see id.* at 2 n.2. Defendant's DCMWA argument is quickly dispatched before turning to its statute-of-limitations argument.

### A. Plaintiffs' DCWPCL Claims Are Viable Without DCMWA Claims

Defendant "acknowledges that this Court held in *Chang* that a DCWPCL claim may proceed independently of a claim under the DCMWA," but contends that this case is "distinguishable" from the cases cited in *Chang* as permitting standalone DCWPCL actions. Def.'s Suppl. Mem at 3 (citing *Chang*, 2026 WL 1661436, at *7-9 & n.8). The basis on which defendant attempts to distinguish plaintiffs' DCWPCL claims from those alleged in the cases cited in *Chang*—*i.e.*, *Wilson v. On the Rise Enterprises, LLC*, 305 F. Supp. 3d 5 (D.D.C. 2018) and *Akinsinde v. Not-for-Profit Hospital Corp.*, 216 F. Supp. 3d 33 (D.D.C. 2016)—is that plaintiffs here "do not allege they received no wages or were not paid for time that they worked" but rather allege "that they were paid at the wrong *rate*" for that work. *Id.* at 4 (emphasis in original). In defendant's view, this "wrong *rate*" allegation "makes the instant matter more closely analogous" to "the more apposite authority" in *Chan Chan v. Children's National*

*Medical Center*, No. 18-cv-2102 (CKK), 2019 WL 4471789 (D.D.C. Sept. 18, 2019). *Id.* The Court disagrees.

Defendant's reliance on *Chan Chan* is misplaced. As the Judge who authored *Chan Chan* recently recognized, that decision did not account for the 2014 amendments to the DCWPCL, which "provid[e] that an employee may 'pursue [the] balance of unpaid wages' under the DCWPCL . . . regardless of whether an employer previously paid an undisputed portion" of those wages. *Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-cv-1034 (CKK), 2026 WL 2593306, at *7 (D.D.C. Sept. 2, 2026) (citation omitted) (noting that "the Court does not rely" on "the authorities that [the defendant] offers," including *Chan Chan*, "none of which addressed the 2014 amendments to the DCWPCL"); *see also Gwapadinga v. Fescum Inc.*, 636 F. Supp. 3d 71, 73 & n.1 (D.D.C. 2022) (explaining the outdated nature of caselaw that "failed to take into account the statutory amendments"); *Shea Yeleen Health & Beauty, LLC v. Off. of Wage-Hour*, 343 A.3d 551, 559 (D.C. 2025) ("The [DCWPCL's] current version . . . allows an employee to pursue unpaid wages . . . even if those wages are disputed and the employer paid conceded wages."). Following those 2014 amendments, plaintiffs can undoubtedly bring their DCWPCL claims for unpaid wages to recover the difference between the portion of wages that defendant already paid to plaintiffs at a lower rate and the wages that plaintiffs contend, and defendant disputes, they are due under the higher rate of pay established by Section 32-1003(h). This Court already confirmed as much in *Chang*, clarifying that "the DCWPCL clearly contemplates application of this statute even '[i]n the case of a bona fide dispute concerning the amount of wages due,'" 2026 WL 1661436, at *8 (quoting D.C. Code § 32-1304), so "the fact that defendant believes the amount of wages owed [is] less than 'clear[],' . . . has no bearing on

plaintiffs' DCWPCL claim[s]," *id.* (citation omitted). Defendant offers no persuasive reason to depart from this Court's holding in *Chang*, so dismissal on this ground is not warranted.

**B. Plaintiffs' Claims Are Not Barred by the Statute of Limitations**

Turning to the core dispute, defendant asserts that "[p]laintiffs' DCWPCL claims fail as a matter of law because they did not possess the [s]ecurity [o]fficer license required to qualify for the heightened wage rate applicable to [s]ecurity [o]fficers working in [o]ffice [b]uildings during the applicable statute-of-limitations period." Def.'s Suppl. Mem. at 5. Resolution of this challenge turns on the applicable statute of limitations, plus any statutory provisions providing for tolling and delayed accrual.

The DCWPCL provides that an action "to enforce any cause of action for unpaid wages" under the DCWPCL, DCMWA, or similar provisions of D.C. law "must be commenced within 3 years after the cause of action accrued, or of the last occurrence if the violation is continuous." D.C. Code § 32-1308(c)(1). The same provision provides for tolling of that three-year statute of limitations period for certain periods, including "[d]uring any period that the employer fails to provide the complainant with actual or constructive notice of the employee's rights." *Id.* § 32-1308(c)(2)(B). Critically for plaintiffs' purposes, another section of D.C. labor law further elaborates on this three-year statute of limitations, specifying that "[t]he period prescribed in § 32-1308(c) *shall not begin* until the employee is provided all itemized statements and written notice required by this section." D.C. Code § 32-1008(d)(3) (emphasis added). That mandatory written notice must specify, among other things, "[t]he employee's rate of pay and the basis of that rate" and must be provided at "the time of hiring, and whenever any of the information contained in the written notice changes." *Id.* § 32-1008(c)(4).

The D.C. Council enacted these timing provisions as part of the D.C. Wage Theft Prevention Amendment Act of 2014, which sought to "increase[] the penalties for employers

who commit wage and hour violations" and "make[] it easier for workers to collect awards from businesses that steal their wages." D.C. Council, Comm. On Bus., Consumer and Regul. Affs., Bill 20-671, Wage Theft Prevention Amendment Act of 2014, at 2 (Apr. 10, 2014) ("Committee Report"), https://lims.dccouncil.gov/downloads/LIMS/31203/Committee_Report/B20-0671-CommitteeReport1.pdf?Id=60927 [https://perma.cc/NM27-LDKJ]. That Act simultaneously amended several D.C. wage laws, including the DCWPCL and DCMWA, thereby highlighting those statutes' mutual goal of strengthening worker protections. *See* Wage Theft Prevention Amendment Act of 2014, D.C. Law 20-157, 61 D.C. Reg. 10157 (eff. Feb. 26, 2015) (detailing the various statutes amended by the Act). Aware that "[a]s the nation's capital, the District is looked to by all states to exemplify equity to all our citizens," the innovative provisions of the Act reflected the D.C. Council's desire to "lead by example by implementing sound and strong employment wage policies." Committee Report at 4. While various provisions of the Act were questioned as "legally objectionable, ambiguous, or otherwise problematic," Letter from Vincent C. Gray, Mayor of the District of Columbia, to Phil Mendelson, Chairman of the D.C. Council at 1 (Sept. 22, 2014), https://lims.dccouncil.gov/downloads/LIMS/31203/Other/B20-0671-Letter-from-Mayor-on-returning-measure-signed3.pdf?Id=97423 [https://perma.cc/8MVG-5HBY], the provision conditioning the beginning of the statute of limitations period on an employee's receipt of written notice in Section 32-1008(d)(3) received no such criticism. Instead, that provision's language is repeated nearly verbatim in a nearby section of the DCWPCL. *See* D.C. Code § 32-1009(a).

Defendant asserts that "[e]ven assuming [p]laintiffs can state viable claims for periods during which they maintained the required security officer certification, those claims are barred by the applicable three-year statute of limitations" in Section 32-1308(c). Def.'s Suppl. Mem.

at 8-9; *cf.* Def.'s Reply at 8-11 (recognizing that tolling considerations may complicate this question). Plaintiffs correctly point out, however, that, accepting their factual allegations as true, as is required at the motion to dismiss stage, *see Twombly*, 550 U.S. at 555-56, "the limitations clock has not started" because defendant "never gave [p]laintiffs" the "written notice of wages the statute requires," Pls.' Opp'n at 6 (citing D.C. Code §§ 32-1008(d)(3), 32-1308(c)(2)(B)). The amended complaint expressly alleges that defendant did not "provide[] the written notice of the security officer minimum wage as required by law," FAC ¶ 107, and defendant offers no argument to dispel the plausibility of that allegation, *see* Def.'s Reply at 6-7 (discussing the notice provided to employees by the Mayor during the security officer certification process without refuting plaintiffs' allegations that defendant failed to provide the written notice required by Section 32-1008).

"[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)). Thus, "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone*, 76 F.3d at 1205. The face of plaintiffs' amended complaint, at the very least, raises doubts as to whether defendant provided plaintiffs with written notice of their applicable rates of pay as security officers, and, accordingly, as to whether any portion of plaintiffs' claims are time-barred. Indeed, in a closely similar case, where the parties disputed facts as to whether the employer defendants posted or provided the notice required under the analogous provision of D.C. Code § 32-1009, the defendants' motion for summary judgment on a DCMWA claim on statute of limitation grounds was denied. *See Medina v. Kevorkian Cleaning Co.*, 444 F. Supp.

3d 204, 210 (D.D.C. 2020) (observing that "[t]he Act provides that . . . 'the [running of the statute of limitations] shall not begin until the employer posts or provides the required notice'" (quoting D.C. Code § 32-1009)). Since the parties in that case "offered conflicting evidence as to whether [the defendants] satisfied the[] notice requirements," "summary judgment [was] not warranted" even insofar as the plaintiff's claim "pertain[ed] to the conduct" that occurred over three years prior to the filing of plaintiff's complaint. *Id.*

Here, accepting as true plaintiff's plausible allegation that defendant failed to provide notice, *see* FAC ¶ 107, the statute of limitations clock has not begun to run, and dismissal of plaintiffs' claims on statute of limitations grounds is not warranted, *see de Csepel*, 714 F.3d at 604 (observing that "[a]t summary judgment, [a defendant] may well be able to show that . . . claims accrued" earlier, "[b]ut at the motion to dismiss stage, we look only at the complaint").

### C. Plaintiffs' Claims Are Limited to Periods During Which They Held Security Officer Certifications

Although plaintiffs' claims are not, at this stage, subject to dismissal pursuant to the statute of limitations in Section 32-1308(c), defendant argues that, under this Court's decision in *Chang*, plaintiffs cannot state a claim for relief as to periods in which plaintiffs were not employed by defendant as certified security officers due to lapses of plaintiffs' certifications. Def.'s Suppl. Mem. at 5-6, 8-9 (citing *Chang*, 2026 WL 1661436, at *7-9). The parties agree that plaintiffs' claims cover "periods in which [p]laintiffs indisputably held licenses," Pls.' Opp'n at 6, but dispute the consequences for the periods when those licenses lapsed.

Plaintiffs contend that defendant's "alleged conduct supports estoppel" and "bar[s]" defendant from disclaiming plaintiffs' certification statuses "during a gap created by its own acts and omissions," and also that "[w]hether [p]laintiffs held qualifying licensure during any

particular period is a fact question that cannot be decided on the pleadings." Pls.' Opp'n at 5. Defendant has the stronger argument on this point, however.

After conducting statutory interpretation, this Court concluded in *Chang* that "D.C. law requires an individual to hold security officer certification to qualify for" the heightened minimum wage of "a security officer working in an office building in the District of Columbia," established by Section 32-1003(h). 2026 WL 1661436, at *7, *9 (citation omitted). Performing "at least one of the security officer duties" described in Section 2100.1 of Title 17 of the D.C. Municipal Regulations does not create "entitle[ment] to the security officer minimum wage." *Id.* (citing 17 D.C. Mun. Regs. § 2100.1). To the contrary, performing such duties without "hold[ing] security officer certifications" is not "lawful," and subjects both employees and employers to liability under D.C. law. *Id.* at *9 & n.9 (citing 17 D.C. Mun. Regs. §§ 2100.6, 2101, 2126). Plaintiffs' estoppel argument cannot displace the statutory eligibility requirements of Section 32-1003(h), which make no exception for individuals unlawfully performing the duties of security officers without the requisite certifications. *See* Def.'s Reply at 6 (citing *Ocho v. United Am. Sec., LLC*, No. 2026-CAB-000308 (D.C. Super. Ct. July 1, 2026)). Put another way, that defendant was willing to subject itself to liability by tasking plaintiffs to perform duties of a licensed security officer while plaintiffs were unlicensed does not render plaintiffs eligible for higher wages for those periods of unlawful work.

The only relevant question remaining then is during which periods of plaintiffs' employment with defendant did plaintiffs hold a security officer certification entitling them to the wages prescribed by Section 32-1003(h). According to the amended complaint, Iremiren held a security officer license from March 10, 2021, through the end of his employment with defendant in approximately August 2022, and was thus plausibly entitled to higher wages during

that period. FAC ¶¶ 83, 86. The inquiry is more nuanced for Carroll, who the amended complaint alleges held a security officer license from September 22, 2016, through April 30, 2020, but not for the period after that date "through approximately September 24, 2024," when he stopped working for defendant. *Id.* ¶¶ 43, 46. Plaintiffs contend that the "alleged gaps" in Carroll's licensure are "subject to reasonable dispute," making defendant's arguments about his lack of certification during certain periods of employment "inappropriate" to resolve at the motion to dismiss stage. Pls.' Opp'n at 5-6. Those purported factual disputes are addressed in turn below.

First, plaintiffs assert that "Carroll's April 30, 2020 lapse arose during the public health emergency declared for the COVID-19 pandemic, when the District of Columbia treated expiring credentials as remaining valid," and "[w]hether Carroll's credential was extended by those measures during the relevant period cannot be resolved against him on the pleadings." *Id.* at 5 (citing D.C. Act 23-247 § 310; D.C. Law 24-9 § 312). While the exact expiration date of Carroll's security officer license need not be determined at the motion to dismiss stage, judicial notice may be taken of the fact that the latest date on which the District of Columbia may have "treated expiring credentials as remaining valid" pursuant to COVID-19 emergency measures, Pls.' Opp'n at 5, was July 15, 2022, *see Notice of Emergency Rulemaking*, 67 D.C. Reg. 3828 (Apr. 3, 2020) (declaring that security officer licenses shall not "expire until ninety (90) days after the end of the public and public health emergencies" declared by the D.C. Mayor "and during any extension of those emergencies"); *Rose's 1, LLC v. Erie Ins. Exch.*, 290 A.3d 52, 55 (D.C. 2023) (explaining that the D.C. public health emergency ended on July 25, 2021, and the D.C. public emergency ended on April 16, 2022); *see also* Fed. R. Evid. 201; *Simmons*, 170

F.4th at 910 (explaining that a court may consider "matters of which it may take judicial notice" when deciding a Rule 12(b)(6) motion (citation omitted)).[2]

Second, the amended complaint states that, while Carroll held a "security officer license" with "number SO30453" until April 30, 2020, he "was a licensed security *professional* from December 4, 2023, through December 4, 2024." *Id.* ¶¶ 46-47 (emphasis added). Plaintiffs choose their words carefully when discussing that second professional status in their briefing, describing it as "a new credential," Pls.' Opp'n at 3, rather than a new license or certification. Defendant contends that "the only license Plaintiff Carroll held during this period was a Special Police Officer's license as can be established through public records," Def.'s Mot. at 14 n.9; *see also* Def.'s Suppl. Mem. at 9 n.3, an assertion to which plaintiffs do not respond, *see* Pls.' Opp'n at 5-6 (raising factual disputes as to gaps in licensure without discussing the nature of Carroll's second credential); Def.'s Reply at 5 n.1. The Court, relying on those licensing search results for Carroll, generated on an official D.C. government website and showing his licensure as a "Security Officer" through April 30, 2020, and as a "Special Police Officer" from December 4, 2023, to December 4, 2024, *see Occupational & Pro. License Search*, D.C. Dep't of Licensing & Consumer Prot., https://govservices.dcra.dc.gov/oplaportal (last visited Sept. 29, 2026), takes judicial notice that Carroll's second credential was not a security officer license, *see* Fed. R. Evid. 201; *de Sousa v. Embassy of Republic of Angola*, 267 F. Supp. 3d 163, 171 & n.5 (D.D.C. 2017) (taking judicial notice of business filing search results from the D.C. Department of Consumer and Regulatory Affairs); *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 175 n.16

[2] Defendant incorrectly asserts that "even under the most favorable view of the emergency measures," Carroll's license was extended "through October 23, 2021, at the latest"—*i.e.*, ninety days after the public health emergency ended. Def.'s Reply at 5. The notice of emergency rulemaking is clear, however, that the extension of the license was tied to both the end of the public health emergency and the later-terminated public emergency. *See Notice of Emergency Rulemaking*, 67 D.C. Reg. 3828 (Apr. 3, 2020). It remains an open question, subject to further exploration by the parties, whether the emergency rule should be given full effect, since its terms specify that it "will remain in effect for up to one hundred twenty (120) days from the date of adoption . . . unless superseded by a further emergency or final rulemaking." *Id.*

(D.D.C. 2017) (taking judicial notice of search results on "the United States Postal Service's 'Look Up A ZIP Code' tool"); *cf. Simmons*, 170 F.4th at 910 (explaining that a court may consider "matters of which it may take judicial notice" when deciding a Rule 12(b)(6) motion) (citation omitted)). Considering these judicially noticeable facts and drawing inferences in plaintiffs' favor at this early stage of litigation, the only periods during which Carroll plausibly alleged that he was a licensed security officer employed by defendant was from September 22, 2016, through July 15, 2022.

Plaintiffs' final argument is that defendant "cannot obtain a partial dismissal by asking the Court to slice allegedly uncertified stretches out of an otherwise viable claim," and since plaintiffs' DCWPCL claim includes "the periods in which [p]laintiffs indisputably held licenses," it should "survive[] in full." Pls.' Opp'n at 5-6 (citing *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022)). This is wishful thinking by plaintiffs. Motions to dismiss are regularly granted in part and insofar as a plaintiff's claim pertains to inactionable periods of time. *See, e.g.*, *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 187 (D.D.C. 2019) ("The Court therefore grants the motion to dismiss Counts VI and VIII, to the extent they reach conduct occurring after August 1, 2016."); *Lee as Next Friends of M.L. v. Seed Pub. Charter Sch. of Washington, D.C.*, No. 18-cv-2786 (CKK), 2019 WL 4469285, at *5 (D.D.C. Sept. 18, 2019) (denying in part defendant's motion to dismiss "insofar as it pertain[ed] to allegations occurring on or after August 22, 2017," when the one-year limitations began); *Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519 (CKK), 2019 WL 690343, at *7 (D.D.C. Feb. 19, 2019) (granting in part defendant's motion to dismiss because "only those employment decisions occurring on or after January 6, 2016 are actionable"). Such partial dismissal is appropriate here to prevent the devotion of resources towards discovery into periods of plaintiffs' unlicensed

work when plaintiffs were statutorily ineligible for higher wages.[3] Defendant's motion is thus denied as to the periods in which plaintiffs plausibly alleged that they were employed by defendant and entitled to the heightened wages for licensed security officers in D.C. Code § 32-1003(h)—*i.e.*, September 22, 2016, through July 15, 2022, for Carroll, and March 10, 2021, through approximately August 2022, for Iremiren—and defendant's motion is granted as to the remaining periods in which plaintiffs did not hold security officer certifications while working for defendant.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the amended complaint, pursuant to Federal Civil Rule of Procedure 12(b)(6), is granted only as to the periods of time when plaintiffs did not hold security officer licenses while employed by defendants and is otherwise denied. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: October 2, 2026

**BERYL A. HOWELL**
United States District Judge

[3] The authority cited by plaintiff for the proposition that "a court may not carve out and dismiss portions of an otherwise adequately pleaded claim," Pls.' Opp'n at 5, recognized that "the D.C. Circuit does not appear to have weighed in on the issue," *Facebook, Inc.*, 581 F. Supp. 3d at 60; *see also S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*, 605 F. Supp. 3d 157, 160 n.1 (D.D.C. 2022) (recognizing "some disagreement among the federal courts as to whether Federal Rule of Civil Procedure 12 permits a district court to dismiss a portion of a claim (i.e., a theory of liability)" but noting that the "[D.C. Circuit] has appeared to endorse, but not hold, that a court may partially dismiss a claim for relief"). Moreover, neither *Facebook, Inc.* nor the only Court of Appeals decision it cites addressed the propriety of dismissing a portion of a claim as unsupported by factual allegations as to a certain period of time; rather, both considered whether dismissals of substantive theories of liability underlying a claim were proper. *See* 581 F. Supp. 3d at 60 (addressing whether to "dismiss the portion that encompasse[d] challenges to" policies that the defendant was not enforcing); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323, 325 (7th Cir. 2015) (criticizing the district court's decision to grant judgment on the pleadings, which is assessed under the same standard as a Rule 12(b)(6) motion to dismiss, as to "the first two elements of the [applicable legal] test" for one of the claims). Considering the unsettled nature of this question and the contrary authority dismissing portions of plaintiffs' complaints as to unactionable periods of time, the approach taken in *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34 (D.D.C. 2022), is not followed here.